UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LeadingAge Minnesota and Care Providers of Minnesota, | Case No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| Nicole Blissenbach, *in her official capacity as Commissioner of the Minnesota Department of Labor and Industry*, the Minnesota Department of Labor and Industry, and the Minnesota Nursing Home Workforce Standards Board, | |
| Defendants. | |

Plaintiffs LeadingAge Minnesota and Care Providers of Minnesota (together, "Plaintiffs"), as and for their Complaint against Defendants Nicole Blissenbach, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry, the Minnesota Department of Labor and Industry, and the Minnesota Nursing Home Workforce Standards Board (together, "Defendants"), state and allege as follows:

**PRELIMINARY STATEMENT**

1.  This lawsuit challenges the Proposed Expedited Permanent Modifying Certification Criteria, Notice Posting Requirements, and Holiday Pay Rules for Nursing Home Workers, Minnesota Rules, Part 5200.2000 to 5200.2050 (the "Proposed Rule") promulgated by the recently created "Minnesota Nursing Home Workforce Standards Board."

1

4320227.v5

2. The Proposed Rule seeks to mandate time-and-a-half "holiday pay" for specific categories of workers for specific employers in a specific industry. That is, the Proposed Rule seeks to mandate such "holiday pay" for certain "nursing home workers" of "nursing home employers" starting on January 1, 2025. The Proposed Rule also seeks to provide methods for the modification of the holiday pay mandate if "agreed upon by a majority of affected nursing home workers." Proposed Rule 5200.2010, subp. 2.

3. By mandating "holiday pay" for nursing home workers and purporting to sanction a quasi-collective bargaining process to modify the same, the Proposed Rule is plainly preempted by the National Labor Relations Act ("NLRA"), in that it: (a) authorizes activity arguably prohibited by the NLRA and (b) regulates conduct that Congress intended to leave unregulated.

4. As a result, Plaintiffs seek an injunction against the enforcement of the Proposed Rule, a declaration that the Proposed Rule is preempted by NLRA and therefore invalid and unenforceable, and any other relief that this Court deems appropriate.

**PARTIES**

5. Plaintiff LeadingAge Minnesota is a non-profit corporation organized under Minnesota law and headquartered in Minnesota. LeadingAge Minnesota is an association of over 1,000 member organizations across Minnesota, representing organizations providing services along the full spectrum of post-acute care and long-term services and support, including what are commonly referred to as "nursing homes."

6. Plaintiff Care Providers of Minnesota is a non-profit corporation organized under Minnesota law and headquartered in Minnesota. Care Providers of Minnesota is an

4320227.v5

association of over 1,000 member organizations across Minnesota, representing organizations providing services along the full spectrum of post-acute care and long-term services and support, including what are commonly referred to as "nursing homes."

7. Defendant Nicole Blissenbach (the "Commissioner") is the Commissioner of the Minnesota Department of Labor and Industry.

8. Defendant Minnesota Department of Labor and Industry (the "Department") is a Minnesota state government department.

9. Defendant Minnesota Nursing Home Workforce Standards Board (the "Board") is a Minnesota state government agency within the Department, established by the Minnesota Nursing Home Workforce Standards Board Act, Minn. Stat. §§ 181.211 to 181.217 (the "Act").

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over this matter due to Plaintiffs' claim that proposed rules issued by the Board are preempted by the National Labor Relations Act, 29 U.S.C. §§ 151-169 (the "NLRA").

11. This Court has the authority to issue declaratory relief pursuant to 28 U.S.C. § 2201.

12. Venue is proper in this Court because all parties reside in Minnesota and the cause of action arose in Minnesota.

4320227.v5

## BACKGROUND

### I. The National Labor Relations Act.

13. The National Labor Relations Act, 29 U.S.C. §§ 151-169 (the "NLRA") is a federal statute enacted in 1935 to govern collective bargaining rights and labor-management relations in the private sector.

14. Section 7 of the NLRA provides rights to private sector employees as follows:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment….

29 U.S.C. § 157.

15. Section 8 of the NLRA provides that it is unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1).

16. Section 8 of the NLRA further provides that it is an unfair labor practice for an employer to "dominate or interfere with the formation or administration of any labor organization…." 29 U.S.C. § 158(a)(2).

17. Courts have recognized two different theories of federal preemption under the NLRA.

18. First, state law may be preempted under <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236 (1959). Under <u>Garmon</u>, the NLRA preempts the states from

regulating conduct that is "arguably protected or prohibited" by the NLRA. Among other things, Garmon preemption prohibits states from both (a) setting forth standards of conduct inconsistent with the substantive requirements of the NLRA; and (b) providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the NLRA.

19. Second, state law may be preempted under Machinists v. Wisconsin Employment Relations Commission, Lodge 76, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Commission, 427 U.S. 132 (1976). Under Machinists, a state may not regulate conduct, even if it is neither protected nor prohibited by the NLRA, if the conduct is within the zone of activity that Congress meant to be left to the free play of economic forces.

## II. The Minnesota Nursing Home Workforce Standards Board Act.

20. In May 2023, the Minnesota Legislature passed, and the Governor signed into law, the Act which, among other things, established the Board. See 2023 Minnesota Laws ch. 53, art. 3 §§ 3-10 – S.F. No. 3035 (2023); Minn. Stat. §§ 181.211 to 181.217.

21. As is relevant here, the Act required Defendants to adopt rules as follows:

> The board must adopt rules establishing minimum nursing home employment standards that are reasonably necessary and appropriate to protect the health and welfare of nursing home workers, to ensure that nursing home workers are properly trained about and fully informed of their rights under sections 181.211 to 181.217, and to otherwise satisfy the purposes of sections 181.211 to 181.217. Standards established by the board must include standards on compensation for nursing home workers, and may include recommendations under paragraph (c).

Minn. Stat. § 181.213, subd. 1(a).

22. The Act defines "nursing home workers" as "any worker who provides services in a nursing home in Minnesota, including direct care staff, non-direct care staff, and contractors, but excluding administrative staff, medical directors, nursing directors, physicians, and individuals employed by a supplemental nursing services agency. Minn. Stat. § 181.211, subd. 9.

23. The Act defines "nursing homes" to mean licensed nursing homes and boarding cares licensed under state law. Minn. Stat. § 181.211, subd. 7.

24. The Act defines "nursing home employers" as "an employer of nursing home workers in a licensed, Medicaid-certified facility that is reimbursed under chapter 256R." Minn. Stat. § 181.211, subd. 9.

25. The Act further required Defendants to "adopt rules establishing initial standards for wages for nursing home workers no later than November 1, 2024." Minn. Stat. § 181.213, subd. 1(b). The Act provided that the Board "may use the authority in section 14.389"—the expedited rulemaking process—to adopt such rules. Minn. Stat. § 181.213, subd. 1(b).

26. The Act further provides that it is unlawful for a nursing home employer to employ a nursing home worker for lower wages or other compensation than that established as the minimum nursing home employment standards. Minn. Stat. § 181.217, subd. 1.

27. The Act authorizes the Commissioner to investigate possible violations of the standards to be established by the Board. Minn. Stat. § 181.217, subd 2. Additionally, the Commissioner is authorized to enforce Chapter 181, which includes the Act. See Minn. Stat. § 181.1721.

### III. The Proposed Rule.

28. On August 2, 2024, Defendants published a draft of the Proposed Rule.

29. On August 26, 2024, Defendants published notice of intent to adopt the Proposed Rule.

30. The final version of the Proposed Rule was scheduled to be published with the State Register on November 18, 2024. However, the Board has delayed this final publication, and now appears to intend to publish the final version at some point in December 2024.

31. The Proposed Rule requires that, beginning January 1, 2025, any "nursing home worker" who works any "holiday" must be paid time-and-a-half for all hours worked during the holiday. Minn. R. 5200.2010, subp. 1.

32. The Proposed Rule defines "holiday" to include the following dates:

   a. New Year's Day – January 1;

   b. Martin Luther King's Birthday – the third Monday in January;

   c. Washington's and Lincoln's Birthday – the third Monday in February;

   d. Memorial Day – the last Monday in May;

   e. Juneteenth – June 19;

   f. Independence Day – July 4;

   g. Labor Day – the first Monday in September;

   h. Indigenous Peoples' Day – the second Monday in October;

   i. Veterans Day – November 11;

   j. Thanksgiving Day – the fourth Thursday in November; and

7

    k.  Christmas Day – December 25.

Minn. R. 5200.2000, subp. 4.

33. Each of the above holidays is comprised of the 24-hour period from midnight preceding the holiday to midnight at the end of the holiday. Minn. R. 5200.2000, subp. 4.

34. The Proposed Rule also purports to sanction the modifications of holiday days and times upon an agreement of a "majority" of "affected nursing home workers." Minn. R. 5200.2010, subp. 2. More specifically:

    a.  "The start and stop times for the 24-hour period comprising a holiday can be modified by a nursing home employer if agreed upon by a majority of affected nursing home workers or the exclusive representative of the affected nursing home workers if one exists."

    b.  "A nursing home employer may substitute up to four holidays for an alternate day in the same calendar year if the substitution is agreed upon by a majority of affected nursing home workers or the exclusive representative of the affected nursing home workers if one exists."

    c.  "Any agreement to modify a holiday date or time must be made in the calendar year preceding the start of the calendar year in which the modified holiday is observed. There must be written record of an agreement under this item."

    d.  "The nursing home employer must retain a record of agreement to modify a holiday date or time under item C for a minimum of three years following the observation of the modified holiday."

8

Minn. R. 5200.2010, subp. 2(A)-(D).

35. The Proposed Rule does not contain a "severability" clause, and therefore a reviewing court may not sever any portion of the Proposed Rule that violates state or federal law and must instead invalidate the entire Proposed Rule if any portion violates state or federal law.

36. Defendants recently published regulatory guidance that specifically authorizes non-union employers to engage in quasi-collective bargaining with a purported "majority" of their non-union employees:

> Q: *I want to switch 4 holidays on the list for other holidays. We are not unionized. How do we determine how to arrive at agreement on this with a majority of affected nursing home workers?*
>
> A: First determine who in your staff qualify as nursing home workers under the rules. A majority would be fifty percent of those workers plus one. Then find a way to discuss and make a decision together. This could be a meeting with a vote at the end, a survey monkey, a petition in the break room, or any other reasonable way for workers to let their voices be heard. Just keep in mind that you will need to keep a record of the agreement for a minimum of 3 years after the observation of the modified holiday. That could look like meeting minutes, records of vote numbers and when the vote was held, a copy of the petition or something similar.
>
> Q: *I want to change the timing of the holiday to be from midnight to 11:59 p.m. to 6:00 p.m. the night before to 5:59 p.m. the day of the holidays. We are not unionized. How do we determine how to arrive at agreement on this with a majority of affected nursing home workers?*
>
> A: First determine who in your staff qualify as nursing home workers under the rules. A majority would be fifty percent of those workers plus one. Then find a way to discuss and make a decision together. This could be a meeting with a vote at the end, a survey monkey, a petition in the break room, or any other reasonable way for workers to let their voices be heard. Just keep in mind that you will need to keep a record of the agreement for a minimum of 3 years after the observation of the

> modified holiday. That could look like meeting minutes, records of vote numbers and when the vote was held, a copy of the petition or something similar.

Available at: https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_how_to_holiday_pay_111424.pdf.

37. Many of Plaintiffs' members are "nursing home employers" who employ "nursing home workers" subject to the Proposed Rule. Plaintiffs' "nursing home employer" members include those with both unionized and non-unionized workforces.

38. By mandating "holiday pay" and purporting to sanction a quasi-collective bargaining process to modify the holiday dates or times, the Proposed Rule: (a) authorizes activity arguably prohibited by the NLRA under Garmon; and (b) regulates conduct that Congress intended to leave unregulated under Machinists. As such, it is preempted by the NLRA and is invalid and unenforceable.

39. The Proposed Rule authorizes quasi-collective bargaining with a "majority" of "affected nursing home workers" in violation of Section 7 and Section 8(a)(2) of the NLRA. Specifically, the Proposed Rule authorizes "nursing home employers" to negotiate with a "majority of affected nursing home workers," including "supervisors" as defined by Section 2(11) of the NLRA and non-employee "contractors." As such, the Proposed Rule authorizes activity prohibited – or at least arguably prohibited – by the NLRA under Garmon. As such, the Proposed Rule is preempted by the NLRA and is invalid and unenforceable.

40. By mandating "holiday pay" and purporting to sanction a quasi-collective bargaining process to modify the holiday dates or times, the Proposed Rule regulates

conduct that Congress intended to leave unregulated under Machinists. As Judge Rosenbaum explained in Thunderbird Mining Co. v. Ventura, 138 F. Supp. 2d 1193, 1196 (D. Minn. 2001), a state statute will be preempted under Machinists if "[the state]'s statutory scheme intrudes into the collective bargaining process." Like the statute in Thunderbird Mining, the Proposed Rule "improperly shifts the carefully crafted 'balance of bargaining power struck by Congress'" and is therefore preempted under Machinists. As such, the Proposed Rule is preempted by the NLRA and is invalid and unenforceable.

41.   The Proposed Rule is not a "minimum labor standard" because it specifies specifically when the holiday pay wage must be paid and how the employer and the union can negotiate changes in the hours of the holiday and change up to four holiday dates. This micro-management cannot be viewed as setting forth a minimum labor standard. The Proposed Rule does not "merely provide the backdrop for negotiations" but instead interferes with the entire process of collective bargaining. The Proposed Rule is not "neutral." Machinists, 427 U.S. at 156 (Powell, J., concurring). Instead, the Proposed Rule openly "reflect[s] an accommodation of the special interests," id., and thus "is more properly characterized as an example of an interest group deal in public-interest clothing." Chamber of Commerce of U.S. v. Bragdon, 64 F.3d 497 (9th Cir. 1995) (holding that a prevailing wage ordinance "is pre-empted by the NLRA because it is an undue governmental interference with the collective-bargaining processes protected by that Act"); see also 520 S. Michigan Ave. Assocs., Ltd. v. Shannon, 549 F.3d 1119 (7th Cir. 2008) (holding that a state statute is preempted under Machinists because the statute's "narrow scope of application . . . serve[d] as a disincentive to collective bargaining.").

11

## COUNT I:  DECLARATORY JUDGMENT

42. Plaintiffs incorporate the allegations in the Paragraphs above as though fully set forth herein.

43. As set forth above, the Proposed Rule plainly: (a) authorizes activity arguably prohibited by the NLRA under <u>Garmon</u>; and (b) regulates conduct that Congress intended to leave unregulated under <u>Machinists</u>.

44. As such, the Proposed Rule is preempted by the NLRA and is invalid and unenforceable.

45. Therefore, Plaintiff is entitled to a judgment declaring that the Proposed Rule is preempted by the NLRA and is invalid and unenforceable.

## COUNT II:  INJUNCTION

46. Plaintiffs incorporate the allegations in the Paragraphs above as though fully set forth herein.

47. As set forth above, the Proposed Rule plainly: (a) authorizes activity arguably prohibited by the NLRA under <u>Garmon</u>; and (b) regulates conduct that Congress intended to leave unregulated under <u>Machinists</u>.

48. As such, the Proposed Rule is preempted by the NLRA and is therefore invalid and unenforceable.

49. If Defendants are permitted to enforce the Proposed Rule, Plaintiffs' "nursing home employer" members will suffer harm by forcing them to comply with a preempted and unenforceable Proposed Rule, and making these members elect between violating the NLRA or the Proposed Rule.

50. Therefore, Plaintiff is entitled to a preliminary injunction and a permanent injunction which enjoin Defendants from enforcing the Proposed Rule.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. A preliminary and permanent injunction enjoining Defendants from enforcing the Proposed Rule;

2. A declaration that the Proposed Rule is preempted by the NLRA and is therefore invalid and unenforceable; and

3. For such other and further relief as the Court may deem just and equitable.

Dated: November 26, 2024

**FELHABER LARSON**

By: */s/ Grant T. Collins*
Grant T. Collins, MN #390654
Brandon J. Wheeler, MN #396336
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612) 338-0535
gcollins@felhaber.com
bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFFS**